Mr. Calgasway for a felon, Rudy Ragacho. Mr. Ragacho is appealing from the judge's dismissal of his complaint for a failure to accommodate his disability in the Disability Pay Act of 1973. He dismissed it on timeliness grounds. Administrative timeliness. Administrative timeliness for this thing is probably more than 45 days. We submit on two bases that the District Court judge was mistaken. First, under Barnett v. USAir and several other cases, this Court has recognized that the accommodation is mostly an interactive process. And this is akin to in the National Railroad v. Morgan where they talk about a hostile work environment being a series of repeated... Let me ask you, at what point along the way... The interactive process contemplates more than an isolated decision, sort of back and forth. We have case law that says if there isn't a meeting, it doesn't really constitute the interactive process as a matter of law. But at some point along the way, there has to be finality. So here, when did the process end, assuming that there was some meaningful discussion? Well, if you look at the correspondence with the postal service representative, Ms. Sharon Watson, there was never any time that she said the process was ended. Does the employer have to say, this is over? One of the problems we have with the interactive process in this case is, as far as the postal service was concerned, I don't think they ever started the interactive process. They did notify him that they were having this draft meeting. But he knew about it. He didn't learn about it until the 19th of March. They'd already been meeting for two months. If you look at the extra record, on the 22nd of March... And this is what year? This is in 1999, Your Honor. All right. They'd signed off on the fact that they couldn't accommodate it. One of the members of that committee, Mr. Kamenmeier, had stated in February 18th, he decided that it couldn't be accommodated. Yet, Mr. Rigatra had never advised of this, the draft committee meeting, or invited to attend the meetings until he received a certified mail on March 19th. At that point, their decision-making process had concluded. So he wasn't advised of that, and he wasn't involved in that from the standpoint of being interactive. But he wrote back, and he said, well, I can do other... He asked for other... There was a series of correspondence between him and Ms. Watson. And that went until the last letter from Mr. Rigatra, I believe, was... He had a unirrepresentative letter on July 22nd. And until July 27th, that was responded to. And that correspondence was within the 45 days. Where do you... Let's just assume, if you take all these letters, where do you pin the end of the process? Or do you? Or do you say it never ended? It would appear to me that the July 22nd letter was the end of it. Because at that point, it was pretty obvious to Mr. Rigatra and his unirrepresentative that the Postal Service made the decision they weren't going to consider any offer he provided to them. And that was the last of the new alternatives that they had suggested for accommodating. It was on this letter July 22nd. Let me ask you this. Can an employee continually insist... Suppose the employer says, you know, I've considered everything you've offered, you've suggested. And we're just... You can't do the job. We can't accommodate you. The employer writes back and says, you know, how about this? You know, I've got a new idea, a new suggestion. The employer writes back and says, nope, that's not going to work either. Can the employee just keep writing letters? I think that the issue would become on that subsequent letter, that was really an alternative for accommodation. And as far as that letter, but then you're always looking at that letter, whether or not accepting that was a way to accommodate. At a point, it becomes, the issue is ended, and that's when the notice of removal is issued, which occurred in this case in the fall of November. Well, here the removal was substantially after, I think, a couple of months later, right? And nothing really happened during that intervening period. There was some correspondence with their occupational health nurse as to the basis for the psychologist's recommendation that he not work at the same workstation. Let me ask you this. The letter of July 19th from Ms. Watson ended, not quite ended, but almost, in one of the last paragraphs, it ended with a statement, without a clear medical release of this restriction, that is not being able to go into the main facility where he was going to get training, you will not be allowed into the security areas of the facility. Did that suggest that had he supplied a medical, a new medical report, that that would have satisfied their concerns? One of the problems with each of the letters from Ms. Watson is that it always kind of seemed to leave the door open. It didn't touch the door and say this is the final decision. And that letter, no less than the others, and they responded by coming up with an alternative where he wouldn't have to go into the Public Employee Development Center for his training in response to that July 19th letter. What about the June 28th letter, which says there's no accommodation that was available. You have the following option remaining. Apply for disability retirement. Isn't that pretty clear? That is fairly clear. That's what Judge Singleton found was the last letter where he should have known. I think that's a fact issue. That should have been submitted to the judge at trial. The fact is what? Whether that was definitive of the end of his application. Tell me why it isn't. You got a letter like that. It does advise with right to appeal. It does advise with right of the EEO process. And if he's not accommodated, he needs to spend 45 days in the EEO process. So there's two things that lack. Well, is it the fee to include those things and make it less violent? I think so, yes. Is there some law on that? Is there some case holding that? None of this specifically applies to the Rehabilitation Act cases that I'm aware of. But on General Administrative Procedures Act, when there's a final agency decision, they have to give the right of instruction to the person as to what their appeal rights are. And this is submitted in this letter. Also, the termination of the next last sentence where she said, we determine accommodations not possible. But at this point, they still have not included Mr. Regaccio or his counsel in their deliberations as to what accommodation would be necessary. And that was something Mr. Regaccio, his counsel, his EEO, his... Do you think the interactive means you have to sit around a table face to face and talk? Well, the handbook, the poster service, which is in the materials... Wait a minute, is that a yes or a no? Yes. Yes, I think they need to have discussion with the employee. It requires them to sit face to face. Or they can have them interviewed by a third party to report back. But there has to be some interaction. What's wrong with the U.S. mails as an interaction? What law is there that says it has to be some face to face communication? The handbook 307, the poster service issue, said that there would be an interview with the employee. There's a suggestion in the record here that they offered an interview. They offered to meet with him. I can't quite figure out what happened, but there's some suggestion that he didn't attend the meeting. The meeting, as I recall, was on March 5th, and they said they would invite him to a meeting. A letter was mailed to Mr. Regaccio dated March 8th. It was sent March 9th. It was sent by certified mail. It scheduled a meeting on March 12th. Mr. Regaccio got the letter on March 19th, a week after they had this meeting. When he got the letter, he immediately called the human resources manager, Sharon Watson, and told her that he wanted to interact with him. When they had him on March 22nd, they issued their final decision. So, as Judge Arias has argued, you said there is a question of fact. The question of fact would be, would a reasonable employee under all these circumstances have understood as of June 28th, taking Judge Noonan's date, that the interactive process had ended and therefore he had to go file a complaint with the EEO officer. Based on the information that the employee had, in this case he did not have a March 22nd minute with the meeting. No, the meeting was not a meeting at all. Okay, thank you. If you have time, I'll give you a minute to reply. Good morning, may I please report, Andy Yang from the Department of Justice on behalf of the Postal Service. I'd like to follow up on Judge Noonan's question regarding the timing. The district court correctly determined that at the latest, that Mr. Rigacio's June 28th receipt of the June 24th letter would give unequivocal and clear notice that the agency's final decision had been issued. But I'd like to put that in context. That letter followed a slew of letters, which each made clear even before the 28th that the agency's process had concluded and had responded to each of Mr. Rigacio's claims. On the 14th of April, the committee issued a letter that said, as a result of our review, there are no reasonable accommodations that are available to you to allow you to perform the essential functions of your present position. It is suggested two options, that you may request reassignment or request disability retirement. They gave him 30 days to respond. That's at ER 34. He responded. He recognized. He said, I realize that my limitations leave me very few of any options to work in mail processing or customer service. This is at ER 35. And then he requested generally another reassignment. On the 27th of May, the committee returns with a response that said there's no available clerk positions and that they were granting Mr. Rigacio his request for an extension and that he had a, quote, final opportunity to request permanent life-duty reassignment to a funded, vacant position and that he had 15 days. That would have brought him to June 11th. This is the May 27th letter at ER 38. There was another letter from Mr. Rigacio and then in response, on the 3rd of June, the committee issued a letter saying that requested positions are not vacant or funded and that as to Mr. Rigacio's request for a scheme training, that he was medically restricted from entering the facility and that they have determined that, quote, we are unable to provide you with the training to qualify for your position, unquote. And then it concludes that the deadline remains June 11th for any kind of further response from Mr. Rigacio. Did that invite him to submit a revised medical? Your Honor, I believe that in the process there had been new medical evidence submitted that was pertinent. No, but did it invite him to... I don't know that it specifically invited him, but of course, as this back and forth goes forward in the interactive process, that kind of material... And I didn't mean to interrupt when you were going... So that was June 3rd? That was June 3rd. There was a letter by Mr. Rigacio on the 11th asking for additional time and then on the 22nd, he submitted yet another letter explaining that, you know, addressing the question of student training. And then on the 24th, this is the final letter which he received on the 28th that is pertinent. Again, explaining why he could not receive the training in the facility and then explains, quote, that the committee met, unquote, we met and determined that you have not elected any of the options we offered in our April 14th, May 27th, and June 3rd letters to you and then went on to say, quote, we have determined that accommodation is not possible, unquote. And then again, quoting, since there is no accommodation that is available to you, you have the following option, apply for disability requirement, unquote. This is at page 43 of your search record. The district court properly concluded that a reasonable person in this situation would find no later than the 28th have unequivocal notice that the agency's decision had been made. And what's relevant here, as it is in any kind of disability or discrimination context, is that when there's been a final decision by the agency, it's the decision that starts the process of the 45-day time period to consult with the EDO office. And to the extent that there's any dispute, Mr. Rigaccio  this as an interactive process and it's kind of open and doesn't have any time frame. The problem is that the interactive process leads to a decision. It is that decision that starts the 45-day period for going to the EDO office. And by the 28th of June, 1999, at the latest, a reasonable employee would have had that notice and the district court was correct to find. So, if I'm receiving the June 28 letter, he said, gee, we forgot something. I've really got something that I need to bring up. And they write a letter back and say, why don't we think about... That wouldn't stop the process. The interactive process is over. Well, Your Honor raises two separate potential issues. If he had come back and said, for instance, I need a further extension, a third extension... No, no. I said he came back with an idea. And the agency came back with an idea. No, no. He did. He did. He says, look, this is something we forgot. This has never come up before. Try this. Well, if he had done that at that point and the agency had decided... I think could entertain it, but the agency also, in light of this long history, through multiple extensions prior, could have said, this process has ended, we've done it out far enough, we're standing by our decision. Either one would have been fine. But, of course, that's not what happened here. What happened is on the 24th. Yeah, I understand. The agency made very clear, if it wasn't already clear by the 3rd of June, made very clear by the 24th. I understand. What I have a problem with is this Morton case where it states that if it is the employer's responsibility through participation in the interactive process to assist in identifying possible accommodations. Your Honor, that... I understand your question, but that question goes to the merits of the decision. If there has been a decision in the 45-day time period it starts to run, to the extent that Mr. Ragacci would like to challenge the interactive process and would like to say that it's insufficient, he has to do so by timely challenging the decision that's made that results from what the agency believed to have... You're not saying it becomes void. You're saying there has to be a challenge. There has to be a challenge and that challenge has to be in 45. It doesn't kick up the 45-day again. No, it does not. And that's important, Your Honor, because in these types of employment disputes, the employer has to be able to rely on decisions that are made that are not challenged. In fact, the Supreme Court in Evans, which the Court cited to and discusses in the Morton case, which the Court has applied in lines to this particular context, explained that when an employee fails to challenge an action and their time runs, the employer at that point is entitled to treat that action as lawful, regardless of whether it is or is not. Once that time runs, the employer is allowed to rely upon it. And here, where the employee had clear notice by at least at the latest, the 28th of June, the employer was allowed to rely on that decision going forward. Let me move to another question. As I understand counsel's argument, is that the interactive process was void, therefore, he gets another crack. And the reason the interactive process was void is it's insufficient to have these face-to-face meetings. Now, I'd like your response to that because apparently there weren't face-to-face meetings. What's at issue is here, first of all, Your Honor, is not whether the interactive process was correct, not correct. What's at issue is whether there was an employment decision that was unlawful under the Age Act. And to be able to challenge that employment decision, that is to challenge the interactive process, Mr. Rigacio needed to contact the EEO office within 45 days of June 28, which he did not. Now, your question really goes to the merits. What is an interactive process? Do we have to have face-to-face meetings? Is it sufficient to have letters? Your Honor, letters can be more than sufficient, just as in many administrative contexts, they can be sufficient, but we're not there at this point because, again, the question is, once the employee has noticed of the decision, that is, the agencies back and forth, and the EEO   notified the EEO office by 45 days from that date, then whether or not the interactive process is sufficient is irrelevant. Okay, so what you're saying, it doesn't make it void. If he's right, it may make it voidable, but that issue has to come up to the contact of the EEOC office. That's right, Your Honor. It goes to the merits of whether there was a reasonable accommodation that was provided to Mr. Regaccio, and that question would arise only if Mr. Regaccio had timely contacted the EEO office to start the process. He did not. If this report was correct, determining that June 28th at the latest was the date that a reasonable employee would have known to start that process. So what you're saying is he shouldn't have bothered with the July 12th letter? Your Honor, if he wishes to send a further letter, of course, that you have the option of applying for disability retirement. I think what you're seeing there is an employer's attempt to keep this hammock more clear. The decision had been clearly made. Mr. Regaccio sent another letter, and that letter that you're talking about, the 19th, which is the     employee would have known to start that process. And as you conclude, we're reiterating that you have the option of applying for disability retirement. It's simply a regurgitation of what's already gone  the process. So remember what we're talking about is not final agency action, any kind of formal requirement in the sense of APA rulemaking. This is a claim of discrimination that can arise in many, many different contexts. It can arise in many contexts. So the reason for this is that the union is not pertinent as to the respect to the EEO process. There are union collective bargaining agreements that come into play and it's an  process. So it's independent. The union may assist  the EEO process, but it's certainly not a required thing. Thank you, Your Honor. Thank you. The letter of June 24th, if you look at the letter of  24th, it says that the EEO process is  a required thing. The EEO process is not a required thing. The EEO process is not a required thing. The EEO process is a required thing.   process is not a required thing. The EEO process is a required thing. Thank you, Your Honor. Thank you, Your             Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your   Thank    And I want to  Madam will be second. Thank you, Madam will be second. Thank you, Your Honor. Thank you. And I would            Did you have anything else to say? No. And no question at all. Thank you. Did you have anything
judges: Wallace, Noonan, Paez